**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRIAN LUECKE, | ) | CASE NO. 5:14-CV-241 |
| | ) | |
| Petitioner, | ) | JUDGE GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| ALAN LAZAROFF, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Before the court is the petition of Brian Luecke ("Petitioner" or "Luecke") for a writ of

habeas corpus filed pursuant to 28 U.S.C. § 2254.  Luecke is in the custody of the Ohio

Department of Rehabilitation and Correction pursuant to journal entry of sentence in the

case of *State of Ohio vs. Luecke*, Case Nos. 2011-CR-217 and 2010-CR-235  (Portage

County Sept. 9, 2011).  (Doc. Nos. 11-4, 11-9.)  For the reasons set forth below,

Luecke's petition should be dismissed with prejudice.

**I. State Procedural History**

**A.     State Trial Court Proceedings**

**1.     2010-CR-235**

In April 2010, in case number 2010-CR-235, the State issued an indictment

charging Petitioner with aggravated vehicular assault; vehicular assault; operating a

vehicle under the influence; failure to stop after an accident; and felonious assault.

(Doc. No. 11-1.)  In February 2011, Petitioner signed a written plea of guilty, in which he

pleaded guilty to one count of felonious assault.  (Doc. No. 11-2.)

During a February 17, 2011 plea hearing, the State dismissed the balance of the indictment.  (Doc. 18-1 at 2.)  In response to questions from the trial court, Petitioner indicated that he understood the nature of the charge and the potential sentence, including post-release control.  (*Id*. at 3-5.)  He also stated that he understood the consequences of his guilty plea, and that, by pleading guilty, he was foregoing his right to: a jury trial; confront witnesses against him; subpoena witnesses on his behalf; compel the State to prove its case beyond a reasonable doubt; avoid self-incrimination; and appeal.  (*Id*. at 5-7.)  Petitioner indicated that he had not been promised anything in exchange for his plea, and that he had reviewed the written plea with his counsel, and understood its terms.  (*Id*. at 7-8.)  Petitioner stated that he had signed the written guilty plea and waived his constitutional rights as described by the trial court.  (*Id*. at 8.)  The trial court determined that Petitioner had knowingly, intelligently and voluntarily entered into the guilty plea, and understood the consequences.  (*Id*.)  The court accepted Petitioner's plea.  (*Id*. at 9.)

### 2.    2011-CR-217

In April 2011, in case number 2011-CR-217, the State issued an indictment charging Petitioner with five counts of rape, arising out of sexual contact with an individual under the age of 13.  (Doc. No. 11-5.)  In May 2011, the State issued a supplemental indictment charging Petitioner with four more counts of rape arising out of sexual contact with an individual under the age of 13, as well as two counts of importuning, arising out of Petitioner's solicitation of sexual activity from an individual

2

under the age of 13.  (Doc. No. 11-6.)

In August 2011, Petitioner signed a written guilty plea, in which he pleaded guilty to three counts of rape and both counts of importuning.  (Doc. No. 11-7.)  The written plea acknowledged that the State would recommend that Petitioner receive concurrent sentences of life imprisonment with the possibility of parole after 10 years on the rape counts, and concurrent five-year sentences of imprisonment on the importuning counts, to run concurrent to the sentences on the rape counts.  (*Id*.)

On August 8, 2011, the trial court conducted a plea hearing.  (Doc. No. 18-2.) The trial court ascertained that Petitioner understood the nature of the charges to which he was pleading guilty, and that, as a result of his plea, he would be labeled a Tier III sex offender.  (*Id*. at 3-4.)  Petitioner indicated that he understood the State's sentencing recommendations and the potential penalties for the offenses to which he was pleading guilty, including post-release control.  (*Id*. at 4-6.)  Petitioner stated that he understood the consequences of his plea, including that he was waiving his right to: a jury trial; confront witnesses against him; subpoena witnesses on his behalf; compel the State to prove its case beyond a reasonable doubt; avoid self-incrimination; and appeal. (*Id*. at 6-8.)  Petitioner acknowledged that he had not been promised anything in exchange for, or threatened to obtain, his guilty plea.  (*Id*. at 8.)  Petitioner agreed that he had signed the plea form, and that he had done so voluntarily after reviewing it with his attorney.  (*Id*. at 9.)  Petitioner pleaded guilty to the counts set forth in the plea form, and the court determined that he had done so knowingly, intelligently and voluntarily. (*id*. at 10-11.)

3

### 3.    Sentencing

In a September 9, 2011 judgment entry, the state trial court imposed a seven-year term of imprisonment for the felonious assault count in case number 2010-CR-235.  (Doc. No. 11-4.)

Also in September 2011, the state trial court conducted a sentencing hearing in case number 2011-CR-217.  (Doc. No. 18-3.)  Before imposing sentence, the trial court explained Petitioner's obligations as a Tier III sex offender and reviewed a document describing those obligations with Petitioner.  (*Id*. at 2-4.)  Petitioner indicated that he understood his obligations as described in the document, and that he had signed the document voluntarily.  (*Id*. at 3.)  When Petitioner indicated that he had not read the document, the trial court gave him and his counsel, Donald Malarcik, time to read it together. (*Id*. at 4.)  After reading it, Petitioner stated that he understood his obligations and duties as a Tier III sex offender, and that he had no questions regarding the requirements.  (*Id*.)  He reiterated that he had signed the document voluntarily and that he understood it completely.  (*Id*.)  The trial court declared Petitioner a Tier III sex offender.  (*Id*. at 5.)

The trial court gave Petitioner's counsel an opportunity to speak regarding the sentence in the case.  (Doc. No. 18-3 at 5.)  Attorney Malarcik generally spoke about the difficulties Petitioner would face as a sex offender in prison, and opined that Petitioner would likely not be granted parole when he was first eligible.  (*Id*. at 5-6.)   He argued that, by agreeing to plead guilty, Petitioner had saved the victim in the rape counts – Petitioner's daughter – from having to testify at trial.  (*Id*. at 6.)  Finally,

4

Attorney Malarcik argued that Petitioner had displayed appropriate remorse:

> He's been on suicide watch since he was arrested in July on this.
>
> I think he's spent less than two weeks out in the general population because he was so despondent.
>
> I spoke to a counselor at the Coleman Center who visited with [Petitioner] and she told me, Your Honor, that she diagnosed [Petitioner] with having bipolar.  He is bipolar and she believes he's suffering from mental health issues.

(*Id*. at 7.)  Attorney Malarcik also noted for the court that, at the time that Petitioner had committed the offenses, he was abusing alcohol and drugs.  (*Id*.)

The State offered a statement from the father of the individual who was identified as the victim of the importuning counts.  (*Id*. at 8-9.)  Finally, Petitioner addressed his family members, who were present in the court room.  (*Id*. at 10-11.)  Thereafter, the trial court imposed concurrent sentences of life imprisonment with the possibility of parole after 10 years on the three rape charges, to run consecutive to concurrent terms of imprisonment of three years on the two importuning charges.  (*Id*. at 11-12.)  The trial court determined that the sentence in 2011-CR-217 would run consecutively to the sentence in 2010-CR-235, for a total term of imprisonment of 20 years to life.  (*Id*. at 13.)  On September 9, 2011, the trial court entered a judgment entry imposing sentence in case number 2011-CR-217.  (Doc. No. 11-9.)

## B.    State Appellate Court Proceedings

In October 2011, Petitioner, through new counsel, filed a notice of appeal from his sentence in case number 2011-CR-217.  (Doc. No. 11-10.)  In December 2011, Petitioner, *pro se*, filed a notice of appeal and a motion for leave to file a delayed

5

appeal from his sentence in case number 2010-CR-235.  (Doc. Nos. 11-11 and 11-12.)
In February 2012, the state appellate court granted the motion for leave to file a
delayed appeal and consolidated the two appeals.  (Doc. No. 11-13.)  In his appellate
brief, Petitioner asserted the following assignments of error:

> I.    The sentence of the trial court is contrary to law
>       because it failed to reflect any consideration of the
>       purposes and principles of felony sentencing
>       contained in [Ohio Revised Code] § 2929.11 or the
>       seriousness and recidivism factors of [Ohio Revised
>       Code § 2929.12.  The trial court committed abuse of
>       discretion when it imposed consecutive sentences
>       without adequate justification.
>
> II.   The trial judge violated the appellant's right to due
>       process when it sentenced the appellant to
>       consecutive prison terms and erred by failing to
>       conduct a proportionality review in determining
>       consecutive sentences to be appropriate.

(Doc. No. 11-14.)  Although not included in the heading, the brief's discussion of the
second assignment of error argued that the trial court's sentence violated Petitioner's
Eighth Amendment rights.  (Doc. No. 11-14 at 14-15.)  In June 2012, the state appellate
court affirmed Petitioner's sentences.  *State v. Luecke*, Nos. 2011-P-0085, 2011-
P0104, 2012-Ohio-3032 (Ohio App. Ct. June 29, 2012).

Petitioner, *pro se*, filed a notice of appeal and a memorandum in support of
jurisdiction in the Ohio Supreme Court (Doc. Nos. 11-17, 11-18.)  He asserted the same
two issues that he raised in his direct appeal.  (Doc. No. 11-18.)  In November 2012, the
Ohio Supreme Court declined jurisdiction and dismissed the appeal.  *State v. Luecke*,
977 N.E.2d 694 (Table), 133 Ohio St.3d 1467 (Ohio 2012).

**C.      Petition for Post-Conviction Relief**

In February 2012, Petitioner, *pro se*, filed a petition for post-conviction relief

pursuant to Ohio Revised Code § 2953.21.  (Doc. No. 11-21.)  He raised the following

claim for relief:

> I was deprived of my 5th [A]mendment rights due to implied
> leniency by the detectives.
>
> <u>Supporting Facts</u>: The detectives implied leniency for a
> statement on my part. [S]ubtle psychological coercion was
> also used.

(*Id*.)  In June 2014, the state trial court denied the petition without a hearing.  *See*

Portage County, Ohio, Common Pleas Case No. 2011-CR-0217, entry at 06/14/2014

(available at http://www.co.portage.oh.us/pa/pa.urd/pamw2000*docket_lst?73278035)

(last visited March 31, 2015).

**D.      First Motion for Leave to File a Delayed Application to Reopen**

In April 2013, while his petition for post-conviction relief was pending in the trial

court, Petitioner, *pro se*, filed a motion for leave to file a delay application to reopen his

appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure.  (Doc. No. 11-

23.)  In November 2013, the state appellate court denied the motion as, *inter alias*,

untimely filed.  (Doc. No. 11-24.)

**E.      Second Motion for Leave to File A Delayed Application to Reopen**

Later in November 2013, Petitioner, *pro se*, filed a second motion for leave to file

a delayed application to reopen his appeal pursuant to Rule 26(B).  (Doc. No. 11-25.)

In it, he asserted that he intended to raise two bases for arguing that he received

ineffective assistance of appellate counsel:

7

I.      [Appellate counsel's] failure to raise the important issue of trial counsel's ineffectiveness.

II.     [A]ppellate counsel's failure to adequately consult and communicate with Appellant in order to properly prepare his Appellant's Brief.

(*Id*. at 5.)  Petitioner described his trial counsel's allegedly ineffective assistance as follows:

Trial counsel's ineffectiveness revolves around the issue of Appellant's mental impairment stemming from his psychiatric health problems and long-standing drug and alcohol abuse. Said mental impairment was known by trial counsel but was inexplicably ignored by [blank].  At the time of the sentencing hearings, Appellant's mental condition was impaired to such an extent that he would not have entered his plea knowingly, intelligently and voluntarily [*sic*] as the law requires.

In addition, counsel did not meet with client sufficiently to ascertain just how mentally impaired Appellant was.  This in turn led counsel to fail to move for a pretrial psychiatric examination of Appellant to determine his mental status and fitness to stand trial or to enter a plea.

Furthermore, appellate counsel was well aware of Appellant's mental impairment and actually alluded to it in the Statement of the Facts.  And yet, he failed to raise the issue of trial counsel's deficient performance regarding the failure to properly investigate its extent prior to allowing Appellant to enter pleas on both cases he was facing.  This is even more of a failure to effectively represent Appellant because of the two cases, each of which presented separate, but distinct possible defensive strategies which counsel just ignored.  The facts of each case involved such complicated legal issues that it would be extremely difficult for a defendant without mental impairments to understand and comprehend.

Furthermore, all of the above facts regarding Appellant's mental status and trial counsel's failure to investigate it and use it effectively for the defense is evidence on the record. So there is no excuse for appellate counsel to fail tor aise such a potent defensive issue.  Against , the prejudice to

8

> Appellant is the manifest injustice he suffered as a result.
> Had trial counsel adequately investigated Appellant's mental
> condition, there is a reasonable probability that he could
> have obtained plea deals on both causes or entered a plea
> of not guilty by reason of insanity or even obtained a Crim.
> R. 29 dismissal of the charges, at least in case no. 2010 CR
> 0235, involving the automobile accident.

(*id*. at 6.)  In April 2014, the state appellate court denied the motion as, *inter alias*,

untimely filed.  (Doc. No. 11-26.)

## II. Proceedings in This Court

In February 2014, Petitioner, *pro se*, filed his § 2254 petition in this Court.  (Doc.

No. 1.)  He raises four grounds for relief, which can be liberally construed[1] to assert the

following claims:

I.  The state trial court violated Petitioner's right to due process when it imposed consecutive sentences without justification.

II.  The state trial court violated Petitioner's right to due process and his Eighth Amendment rights when it failed to conduct proportionality review prior to imposing consecutive sentences.

III.  Petitioner received ineffective assistance of trial counsel when his trial counsel:

(A) failed to investigate Petitioner's psychiatric conditions and raise the issue that his psychiatric conditions affected Petitioner's ability to knowingly, voluntarily and intelligently plead guilty;

(B) failed to investigate whether Petitioner's

---

[1]  The exact wording of the petition is set forth in the attached appendix.  These grounds for relief are repetitive, mislabeled and confusing.  Given this Court's obligation to liberally construe *pro se* habeas petitions, *see Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985), this Report and Recommendation has construed the petition to raise the claims most relevant to the record in this case

9

psychiatric conditions could have been used
strategically at trial to defend against the charges;

(C) scared Petitioner into pleading guilty; and

(D) failed to explain to Petitioner when he would be
eligible for parole under the terms of his written guilty
pleas.

IV.  Petitioner received ineffective assistance of appellate
counsel when his appellate counsel failed to raise the
following issues on direct appeal:

(A) Ineffective assistance of trial counsel based on
trial counsel's failure to investigate whether to assert
Petitioner's psychiatric conditions as a defense to the
charges;

(B) Ineffective assistance of trial counsel based on
trial counsel's admission of irrelevant and prejudicial
evidence (the statement of the victim's father) at
Petitioner's sentencing hearing; and

(C) Breach of contract based on the trial court's
failure to comply with the terms of Petitioner's written
guilty plea; *i.e.*, by imposing consecutive sentences in
this case.

Respondent has filed a Return of Writ in this case, in which Respondent

requests that this Court dismiss Petitioner's petition on the basis that it contains both

exhausted and unexhausted claims.  (Doc. No. 11.)[2]

---

[2] Respondent's briefing in this case is not helpful.  Rather than thoroughly address
the complicated procedural issues raised by Luecke's petition, Respondent's brief relies
on conclusory assertions – frequently unsupported by case law – and perfunctory
statements regarding the procedural posture of Petitioner's grounds for relief.  For
example, Respondent asserts that Petitioner failed to fairly present his first ground for relief
to the state courts.  (Doc. No. 11 at 13-14.)  Then, without further analysis, Respondent
contends that the first ground for relief is procedurally defaulted.  (*Id*. at 14.)  This Court
assumes that Respondent intended to argue that, because Petitioner failed to fairly present
his first ground for relief to the state courts, it was not exhausted and, because there are
no further mechanisms by which Petitioner could assert the claim in state court, it is also

## III. Procedural Issues

### A.     Jurisdiction

A state prisoner may file a § 2254 petition in "the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d).  The Court of Common Pleas of Portage County, Ohio sentenced Petitioner.  (Doc. Nos. 11-4, 11-9.)  Portage County is within this Court's geographic jurisdiction.  *See* 28 U.S.C. § 115(a).  Accordingly, this Court has jurisdiction over the petition.

### B.     Exhaustion and Procedural Default

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  *See* 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted his state remedies, and a federal court must dismiss his petition.  *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *See Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir.

---

procedurally defaulted.  Respondent does not, however, perform this analysis.  Respondent's briefing is replete with other instances in which counsel's failure to analyze the relevant procedural issue complicates this Court's review of the petition in this case.  By way of another example, Respondent argues that Petitioner waived two of his grounds for relief by pleading guilty, but fails either to cite a single case that supports that argument, or to analyze the record with respect to the purported waiver.  These insufficiencies only serve to make a complicated case that much more difficult.

11

1990).

Further, a federal court may not review "contentions of federal law . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). If the State argues that a petitioner has procedurally defaulted, the Court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction.  . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  Similarly, where there are no longer any state court remedies still available to a petitioner with respect to unexhausted claims, and this Court may deem those claims procedurally defaulted.  *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' *Engle v. Isaac,* 456 U.S. 107, 125, n.28 (1982), it is satisfied 'if it is clear that [the habeas petitioner's] claims

12

are now procedurally barred under [state] law,' *Castille*[, 489 U.S. at 351].").

### 1. Grounds One and Two: Sentencing

Petitioner's first ground for relief asserts that the state trial court violated Petitioner's right to due process when it imposed consecutive sentences without justification.  Respondent argues that Petitioner failed to fairly present this claim to the state courts and, thus, it is not exhausted.  Fair presentment of a claim in a federal constitutional context requires a petitioner to apprise the state courts that his claim is a federal claim, rather than "merely . . . an issue arising under state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  In this case, review of the record reveals that Petitioner asserted this argument in his direct appeal and then again in his memorandum in support of jurisdiction in the Ohio Supreme Court.  In each instance, however, his argument relied solely on Ohio sentencing law and various provisions of the Ohio Revised Code.  Indeed, it was not until his habeas petition that Petitioner asserted that the trial court's imposition of consecutive sentences without justification violated his right to due process.  Review of the appellate court decision reveals that the appellate court considered Petitioner's claim as one arising under Ohio sentencing law. In sum, Petitioner failed to apprise the state courts that his claim was a federal claim, and the state appellate court treated the claim as one arising solely under Ohio law. Accordingly, Petitioner did not exhaust his first ground for relief.

Further, there is no method by which Petitioner could now present the constitutional nature of this claim to the Ohio courts.  Petitioner could have asserted this claim in the constitutional context in his direct appeal.  He failed to do so and, under

13

Ohio law, *res judicata* now prohibits him from raising the issue in any post-conviction proceeding.  *See State v. Cole*, 443 N.E.2d 169, 171, 2 Ohio St.3d 112, 113 (Ohio 1982); *State v. Perry*, 226 N.E.2d 104, 10 Ohio St.2d 175 (Ohio 1967) (holding that *res judicata* bars a criminal defendant from raising in post-conviction proceedings those claims that could have been raised on direct appeal).  The Sixth Circuit has determined that "the application of *res judicata* is an adequate and independent state ground justifying foreclosure of constitutional claims in habeas."  *Mason v. Mitchell*, 320 F.3d 604, 628 (6th Cir. 2003).  Because Petitioner can no longer raise this claim in state court, it is procedurally defaulted.  Further, Petitioner offers no argument regarding cause for, or prejudice resulting from, his procedural default of this ground for relief, and, thus, it should be dismissed.

Unlike his first ground for relief, however, Petitioner asserted his second ground for relief in constitutional terms in state court, as he argued that the state trial court had deprived him of due process when it failed to conduct a proportionality review before imposing consecutive sentences.  The state appellate court considered this argument in the context of federal constitutional law.  *See Luecke*, 2012-Ohio-3032 at ¶¶ 24-27.  Petitioner asserted this same argument in its federal constitutional terms to the Ohio Supreme Court, which declined jurisdiction.  Accordingly, Petitioner properly exhausted his second ground for relief and this Court shall consider it on the merits.

### 2.    Ground Three - Ineffective Assistance of Trial Counsel

In grounds 3(A) and 3(B), Petitioner asserts that his trial counsel was ineffective in various ways related to Petitioner's psychiatric conditions, *i.e.*, by failing to investigate

their effect on Petitioner's ability to plead guilty in a knowing, voluntary and intelligent manner, and by failing to consider whether to assert the psychiatric conditions as a defense to the charges in this case.  In grounds 3(C) and 3(D), Petitioner argues that his trial counsel was constitutionally ineffective when he "scared" Petitioner into pleading guilty, and when he failed to explain when Petitioner would be eligible for parole. Petitioner failed to raise these claims in the state courts and, thus, they are not exhausted.

Further, there is no method by which Petitioner could now present these claims of ineffective assistance of trial counsel to the state courts.  To the extent that these claims rely on evidence in the record – *e.g.,* Attorney Malarcik's acknowledgment of Petitioner's bipolar disorder diagnosis during sentencing – Petitioner could have asserted them on direct appeal, where he was represented by new counsel.  He did not do so, and *res judicata*, an independent and adequate state procedural ground, *Mason*, 320 F.3d at 628, now prohibits him from raising these issues in any post-conviction proceeding, *Cole*, 443 N.E.2d at 171, 2 Ohio St.3d at 113; *Perry*, 226 N.E.2d 104, 10 Ohio St.2d 175.

Further, to the extent that Petitioner's claims of ineffective assistance in this context rely on evidence outside of the record – *e.g.*, statements from the jail psychiatrist who diagnosed Petitioner with bipolar disorder, or an affidavit from Petitioner regarding counsel's alleged misconduct – the proper vehicle for such a claim in state court would be a petition for post-conviction relief under Ohio Revised Code § 2953.21.  *See, e.g., State v. Fields*, 736 N.E.2d 933, 938, 136 Ohio App.3d 393, 400 (Ohio App. Ct. 1999).  That statute, however, generally requires defendants to file a

15

motion for post-conviction relief within 180 days "after the date on which the trial transcript is filed in the court of appeals in the direct appeal."  Ohio Rev. Code § 2953.21(c)(2).  Further, Petitioner has already filed a post-conviction petition, and Ohio law prohibits a second or successive § 2953.21 petition unless the petitioner can satisfy one of two conditions, which also serve as exceptions to the 180-day time limit.  One condition requires the defendant to show that he was "unavoidably prevented from discovery of the facts" upon which his claim for relief was based or that his claim is based on a newly-recognized federal or state right that applies retroactively.  *See* Ohio Rev. Code § 2953.23(b)(2).  Given that Petitioner's psychiatric disorders were discovered at some point before his September 2011 sentencing hearing and that his other claims are based on his interaction with his trial counsel, he cannot now claim that he only recently discovered the facts on which these claims are based.  Nor does he allege – and, given the well-established nature of the right to counsel, he cannot show – that his ineffective assistance claim is based on a newly-recognized federal or state right.  Accordingly, this first condition will not permit Petitioner to raise the ineffective assistance of counsel claims set forth in his third ground for relief in a state court post-conviction proceeding.  Further, the second condition for permitting a second or successive § 2953.21 petition or excusing a late petition applies where a defendant's claim is based on results of DNA testing, *see* Ohio Rev. Code § 2953.23(b)(2), and clearly is not applicable in this case.  Given that neither condition would apply either to allow Petitioner to file a second § 2953.21 petition or to excuse Petitioner's untimely filing of such a petition, it would be futile for him to return to state court to pursue the claims set forth in Ground Three.  Accordingly, these claims are procedurally defaulted.

16

 See, e.g., Rolling v. Muiligan, No. 1:12-CV-1007, 2012 WL 3961214 at **9-10 (N.D. Ohio Sept. 10, 2012) (Gaughan, J.) (finding procedural default where the petitioner's state court motion for post-conviction relief would be untimely and neither exception would apply to excuse the untimeliness).

 With respect to Grounds 3(A) and 3(B) – arising out of trial counsel's failure's regarding Petitioner's psychiatric condition –  the petition could be construed to argue that his appellate counsel's ineffectiveness in failing to raise these ineffective assistance of trial counsel grounds constitutes cause for his procedural default.  Any such argument would lack merit.  While a claim of ineffective assistance of counsel can constitute cause to excuse the procedural default of another claim, the claim of ineffective assistance that is asserted as cause must itself have been properly exhausted.  Edwards v. Carpenter, 529 U.s. 446, 452 (2000).  Here, Petitioner asserted that his appellate counsel was ineffective in failing to raise multiple instances of trial counsel's ineffective assistance – including various failures related to Petitioner's mental condition.  He did so, however, in two motions for leave to file a delayed Rule 26(B) Application, each of which was denied by the state appellate court.  Accordingly, no state court has considered the merits of the claim of ineffective assistance of appellate counsel that could be asserted as cause for Petitioner's procedural default of the ineffective assistance of trial counsel claims asserted in Grounds 3(A) and (B), and, thus, this claim is not itself exhausted.[3]

---

 [3] It is also likely that Petitioner's appellate counsel was not ineffective in omitting claims based on trial counsel's failure to assert Petitioner's psychiatric conditions as a defense to the charge against him or as a basis for challenging the nature of Petitioner's plea, at least to the extent those claims relied on evidence outside of the record.  Appellate

Further, Petitioner cannot return to state court to exhaust the claim of ineffective assistance of appellate counsel.  Rule 26(B) limits the time within which a defendant may seek reopening to "within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time."  Ohio R. App. P. 26(B)(1).  Petitioner's two attempts to obtain leave to reopen his appeal were rejected by the state appellate court on the basis that Petitioner failed to demonstrate good cause for his untimely filing.  Ohio's timeliness requirements in post-conviction proceedings constitute an independent and adequate state ground for declining to review the merits of a petitioner's claims.  *Townsend v. Gansheimer*, No. 1:08-CV-1089, 2009 WL 589332, * 7 (N.D. Ohio March 9, 2009) (adopting the report and recommendation of Perelman, M.J.).  Moreover, nothing in the record suggests that, if Petitioner returns to state court and attempts to reopen his appeal a third time, he will assert a new basis for good cause.  Petitioner attempted to assert these bases for claiming ineffective assistance of appellate counsel in his most recent motion for leave to file a delayed Rule 26(B) application, and has not demonstrated that the state appellate court would have any ground to grant him leave to do so on his third attempt.  Accordingly, to the extent Petitioner asserts his appellate counsel's ineffectiveness as cause for his procedural default of the ineffective assistance of trial counsel claims asserted in Grounds 3(A) and (B), that claim of ineffective assistance of appellate counsel claim is itself procedurally defaulted and cannot constitute cause in this context.

---

counsel would not have been permitted to raise such claims on direct appeal, as direct review of a defendant's conviction is limited to matters contained in the record. *See State v. Gibson*, 430 N.E.2d 954, 957, 68 Ohio App.2d 91, 95 (Ohio App. Ct. 1990).

Petitioner offers no argument regarding the cause of, or prejudice resulting from, his procedural default of the claims set forth in Grounds 3(C) and 3(D).  Further, Petitioner did not assert in state court that his appellate counsel was ineffective in failing to raise these claims on direct appeal.  The record is devoid of any basis for excusing his procedural default of the claims set forth in Grounds 3(C) and (D).  Accordingly, all of the claims asserted in Petitioner's third ground for relief are procedurally defaulted, and should be dismissed.

### 3.      Ground Four - Ineffective Assistance of Appellate Counsel

In Ground 4(A), Petitioner asserts that his appellate counsel was ineffective in failing to raise his trial counsel's failure to investigate whether to assert Petitioner's psychiatric conditions as a defense to the charges against him.  For the reasons discussed in Section III(B)(2), *supra* – where the procedural aspects of this claim are discussed in the context of whether it could serve as cause for Petitioner's procedural default of his other claims – this aspect of the claim is both unexhausted and procedurally defaulted.

In Ground 4(B), Petitioner contends that his appellate counsel was ineffective in failing to argue that his trial counsel was ineffective when trial counsel did not object to the admission of the testimony of the father of one of Petitioner's victims at Petitioner's sentencing hearing.  In Ground 4(C), Petitioner argues that his appellate counsel was ineffective in failing to argue that the trial court breached the terms of Petitioner's written guilty plea when the trial court imposed consecutive terms of imprisonment.  Petitioner has not previously raised either of these claims in state court, and, thus, they are both unexhausted.  Further, as discussed in Section III(B)(2), *supra*, Petitioner's ability to

19

assert these claims in state court is governed by the time limitation in Rule 26(B).  Given

Petitioner's two other unsuccessful attempts at reopening his direct appeal, and the fact

that these claims are based on issues that arose before or at Petitioner's sentencing

hearing, Petitioner has not demonstrated that the state appellate court will have any

ground to permit Petitioner to reopen his direct appeal to assert these claims.

Accordingly, they are procedurally defaulted.

Further, Petitioner offers no argument regarding the cause of, or prejudice

resulting from, his procedural default of the claims set forth in Grounds 4(B) and 4(C).

The record is devoid of any basis for excusing his procedural default of these claims.

Accordingly, all of the claims asserted in Petitioner's fourth ground for relief are

procedurally defaulted, and should be dismissed.[4]

### IV. The Merits of Petitioner's Remaining Claim - Proportionality

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") altered the

standard of review that a federal court must apply when deciding whether to grant a writ

---

[4] Respondent argues that, because Petitioner pleaded guilty, he has waived habeas review of all of his claims.  Such a principle is not applicable to this case.  A habeas petitioner's guilty plea "bars any subsequent non-jurisdictional attack on the conviction," _Werth v. Bell_, 692 F.3d 486, 495 (6th Cir. 2012) (internal quotation marks omitted), because "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea," _Tollett v. Henderson_, 411 U.S. 258, 267 (1973).  "Thus, after the entry of an unconditional guilty plea, the defendant may challenge only the court's jurisdiction and the voluntary and intelligent character of the plea itself." _Werth_, 692 F.3d at 495.  Here, Petitioner's claims can all be liberally construed to attack the voluntary nature of his plea, either by asserting that his mental condition precluded him from competently pleading guilty, or by arguing that facts that were unknown to him – such as whether his mental impairments could serve as a defense to the charges or when he would be eligible for parole under the written plea – rendered his plea involuntary or not intelligently made.

of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal law, as determined
> by the Supreme Court of the United States; or resulted in a decision that was
> based on an unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly

established federal law or was based on an unreasonable determination of the facts in

light of the evidence.  *See Carey v. Musladin*, 549 U.S. 70 (2006); *Williams v. Taylor*,

529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the

Supreme Court, not its dicta, and the law must be clearly established at the time of the

petitioner's conviction.  *See Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and

"unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may
> obtain federal habeas relief with respect to a claim adjudicated on the merits in
> state court.  Under the statute, a federal court may grant a writ of habeas corpus
> if the relevant state-court decision was either (1) "*contrary to* . . . clearly
> established Federal law, as determined by the Supreme Court of the United
> States," or (2) "*involved an unreasonable application of* . . . clearly established
> Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is

"contrary to" clearly established federal law if it reaches a conclusion opposite to that

reached by Supreme Court holdings on a question of law or if it faces a set of facts

materially indistinguishable from relevant Supreme Court precedent and still arrives at

an opposite result.  *Id.* at 405-06.   A decision involves an unreasonable application of

21

federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *See* *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable." *Id*. at 520-21 (internal citations and quotation marks omitted). This Court applies this deferential standard of review to the state courts' rulings on Petitioner's remaining claim.

In his second ground for relief, Petitioner asserts that the state trial court violated his right to due process and his Eighth Amendment rights when it imposed consecutive sentences without conducting a proportionality review. In its decision affirming Petitioner's sentence, the state appellate court determined that, because the trial court properly considered the relevant Ohio statutes in imposing the sentence, the trial court necessarily considered the proportionality of the sentence. *Luecke*, 2012-Ohio-3032 at ¶ 24-26. Petitioner argues that his sentence in this case – specifically, the trial court's decision to run the sentences for Petitioners two separate criminal cases consecutively to one another – was *per se* unreasonable and grossly disproportionate because he was a first-time offender with an "unsound mental state" and he showed "genuine remorse" for his offenses.

Petitioner cannot show that the state appellate court's decision to affirm his sentence in this case was contrary to, or involved an unreasonable application of, clearly established Federal law. "The Supreme Court has determined that strict proportionality between a crime and its punishment is not required." *United States v.*

22

*Marks,* 209 F.3d 577, 583 (6th Cir. 2000) (citing *Harmelin v. Michigan,* 501 U.S. 957, 959-60 (1991)). Nor does the Eighth Amendment require that a sentence in a particular case be proportionate to the punishment imposed on others convicted of the same crime. *Pulley v. Harris,* 465 U.S. 37, 43-44 (1984). Rather, "[t]he Supreme Court has articulated a 'narrow proportionality principle' whereby it held that only 'extreme sentences that are grossly disproportionate to the crime are prohibited.'" *United States v. Flowal,* 163 F.3d 956, 963 (6th Cir. 1998) (quoting *Harmelin,* 501 U.S. at 995-97). Because this "proportionality principle" is a narrow one, "only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks,* 209 F.3d at 583. Consequently, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel v. Estelle,* 445 U.S. 263, 272 (1980). In *Rummel,* for example, the Supreme Court found that a sentence of life imprisonment for successive crimes of fraudulent use of a credit card, passing a forged check, and obtaining money by false pretenses under a recidivist statute was not cruel and unusual punishment. Petitioner points to no United States Supreme Court case that supports his argument that the sentence imposed in his case was grossly disproportionate. *see Woods v. Donald,* ___ S. Ct. ___, ___ U.S. ___, 2015 WL 1400852, *3 (March 30, 2015) ("We have explained that 'clearly established Federal law' for the purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions.") (internal quotation marks omitted).

Further, a sentence that is within the statutory maximum is not generally cruel and unusual punishment. *Austin v. Jackson,* 213 F.3d 298, 302 (6th Cir. 2000); *see*

23

*also United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995); *Cowherd v. Million*, 2008 WL 162936, *4-*5 (6th Cir. Jan. 15, 2008) (finding that a 104-year sentence, consisting of multiple consecutive sentences for separate acts of rape, did not violate the Eighth Amendment).  Ohio law authorizes a trial court to impose consecutive sentences for "convictions of multiple offenses."  Ohio Revised Code 2929.14(C)(4).  Accordingly, Ohio law permitted the trial court to impose the sentence it imposed in this case.  Petitioner's second ground for relief presents no basis for granting habeas relief in this case.

### V. Conclusion

For the reasons given above, the petition should be dismissed with prejudice.


Date: April 14, 2015                                    */s/ Nancy A. Vecchiarelli*
                                                         United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**

**APPENDIX**

The petition asserted the following grounds for relief and supporting facts:

I.    Due process violation in imposing consecutive sentences without justification.

Supporting Facts:
(1) In this case, the court imposed a sentence of life plus ten years, plus an additional 10 years to run consecutively with the first ten (3 years on the importuning charges and 7 years on the felonious assault charges).

(2) This only allows the appellant to seek parole after April of 2013.

(3) The appellant is a first time offender and under this current sentence cannot seek any relief for 20 years.

(4) The court failed to consider the purposes and principles of felony sentencing in the Ohio Revised Code as well as the recidivism factors.

(5) The trial court commit[t]ed abuse of discretion when it failed to provide adequate reasons for the sentence.

(6) The sentence is contrary to [l]aw, because the sentencing hearing transcript and court[']s order and journal entry do not mention the revised code provisions guiding felony sentencing.

(7) Therefore, the record does not provide adequate reasons for the sentence imposed.

(8) The sentence is in violation [of] appellant's due process protection pursuant to both the U.S. [C]onstitution and the Ohio [C]onstitution.

II.   Due process violation by failing to conduct proportionality review prior to consecutive sentencing.

Supporting Facts:
(1)The appellant was sentenced to serve a Life plus ten year term, play an additional ten year term of a traffic accident (7 years) and for the importuning charges (3 years).

(2) Due to the way in which the sentences were written, this leaves the appellant unable to apply for any type of judicial or early release on any of the charges.

[(3)] The appellant therefore has to wait until April, 2031, to even see a parole board, which will most likely deny parole as they usually do.

[(4)] The sentence is per se unreasonable and violates the Appellant's [blank] Amendment Right as guaranteed by the U.S. [C]onstitution.

[(5)] The consecutive sentence imposed violates the appellant's rights to due process[,] a fair and equitable sentence, and violates his [blank] Amendment Rights pursuant to the U.S. [C]onstit[ution].

[(6)] The Trial Court did not engage in even a cursory evaluation of the proportionality of the appellant's case to those other cases which have been similarly situated.

[(7)] The Court did not address the proportionality of the sentence at all, except to say the sentence was necessary not to demean the seriousness of the conduct and that a prison term was warranted.

[(8)] Nor did the court take into account that at 45 years old, the appellant was a first time offender who not only showed genuine remorse, as stated in the record by both the court and his attorney, but also whose mental state was unsound at the time the alleged crime occurred.

III.    Ineffective assistance of appellate counsel

Supporting Facts:
(1) During appellant's incarceration at Portage County Jail, he had three failed suicide attempts, two of which were on record.

(2) After the attempts, the psychiatrist diagnosed him as manic-depressive and bipolar disorder.

(3) Appellant was prescribed psychotropic [*sic*] meds as he should have been all along.

(4) Appellant had many failed suicide attempts throughout his life due to manic episodes that he suffers from.

(5) Appellant's was a "self-medicated" manic-depressive prior to his arrest.

(6) Appellant's trial attorney, Mr. [Malarcik], knows of his mental status and drug problems both before and after his incarceration.

(7) However, even given this information, attorney [Malarcik] failed to raise the issue of appellant's condition and how it might have affected his understanding of the case and the entire plea process.

(8) During the interrogation by detectives, appellant was seriously impaired and

26

under the influence of "bath salts" for the first time ever.

(9) These facts seriously impaired his ability to sep[a]rate fantasy from reality.

(10) To this day, [h]e still sees the psychiatrist at Mansfield Correction[al] Institute, and still takes psychotropic [sic] meds, namely senequan and lithium.

(11) The prison doctor believes that appellant was definitely in a manic state during his traffic accident, and had no chance of determining right from wrong, let alone fantasy from reality.

(12) In spite of the facts mentioned above, appellant's tr[ia]l attorney never investigated how his mental impairments could be used for a trial strategy or as a defense to the charges against appellant.

(13) Trial counsel scared appellant into taking the plea and pleading to crimes he did not know if he had indeed committed them.

(14) Trial counsel told appellant that he should plead to the sentence of ten years to life or he would be facing a life sentence without the possibility of parole.

(15) The trial judge and appellant's counsel failed to explain to appellant exactly when he would be eligible for parole, in light of the seven year sentence in the other case (2010CR0235).

IV.     Ineffective assistance of trial counsel

Supporting Facts:
(1) Because of Appellant's indigent status, the Court appointed Patricia T. Smith to do his appeal.

(2) Appellate counsel was aware of Appellant's drug abuse and impaired mental condition.

(3) In fact, appellate counsel mentioned Appellant's impaired mental condition in the Statement of Facts in the Appellant's Brief.

(4) In spite of the above facts, appellate counsel failed to raise ineffective assistance of trial counsel based on the failure to trial counsel [Malarcik] to use Appellant's mental condition as a viable trial strategy or defense.

(5) This failure by appellate counsel prejudiced Appellant's right to preserve the ineffective assistance claim for further appellate review.

(6) Appellate counsel Smith also failed to cite another basis of trial counsel's

27

deficient performance regarding the admission of non-relevant and highly prejudicial evidence.

(7) The evidence improperly admitted with no objection by counsel consisted of accusations by one of the victim's faither[,] which were a misstatement of facts.

(8) Appellant was prejudiced by the above deficiencies of both appellate and trial attorneys because it gave the court the impression that Appellant had raped the witness's daughter, which he was never accused of, nor did he do it.

(9) Another example of appellate attorney's ineffectiveness was her failure to raise the issue of breach of contract based on the Court's sentence.

(10) The plea agreement which Appellant entered into and which was signed by all parties, including the judge, called for a sentence of ten (10) years to life.

(11) The plea agreement also called for negotiation for the sentence in the traffic case (Case No. 2010CR0235).

(12) It should be noted that in said traffic accident case, Appellant was represented by Att[orne]y Robert Vecchio.

(13) In spite of the above facts, the Court sentenced Appellant to twenty (20) years to life in violation of the plea agreement.

(14) Also in violation of the plea agreement, there was no negotiation concerning the sentence in the traffic accident case.

(15) Because of the breach of the plea agreement, Appellant suffered the obvious prejudice of a significantly longer sentence in violation of his right to effective assistance of his trial counsels, both Att[orne]y [Malarcik] and Att[orne]y Vecchio.

(Doc. Nos. 1, 1-4.)

28